UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
DOCKET NO. CV-1:05-cv-11694

| | | |
|---|---|---|
| ERIC C. PEARCE, | ) | |
| | ) | |
| Plaintiff | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **AMENDED MOTION TO DISMISS BY** |
| v. | ) | **DEFENDANTS AEGIS HANDMADE** |
| | ) | **CARBON FIBER BICYCLES, LLC, AEGIS** |
| KEITH BAUMM, et al., | ) | **RACING BIKES USA, LLC, AND** |
| | ) | **FASTBIKES USA, LLC** |
| Defendants. | ) | |
| | ) | |

Defendants Aegis Handmade Carbon Fiber Bicycles, LLC ("Handmade"), Aegis Racing

Bikes USA, LLC ("Aegis Racing"), and Fastbikes USA, LLC ("Fastbikes") (collectively, the

"Moving Defendants"), by and through the undersigned counsel, submit this memorandum in

support of their Amended Motion to dismiss all causes of action asserted against them pursuant

to Fed.R.Civ.P. Rule 12(b)(6) and Fed.R.Civ.P. Rule 12(b)(2).

I.      **Facts as Pled in Plaintiff's Amended Complaint**

In his Amended Complaint, Plaintiff alleges the following facts

1.      Plaintiff was injured in a bicycle accident on June 29, 2004.  **Amended**

**Complaint, ¶ 30-32.**

2.      Plaintiff alleges that the accident was caused by the failure of a bicycle

component allegedly manufactured by Defendant Advanced Composite Engineering.  **Amended**

**Complaint, ¶ 30, 34.**

3.      Plaintiff does not allege that any of the Moving Defendants manufactured,

designed, marketed or sold any of the bicycle components which allegedly failed and caused his

accident.  **See Amended Complaint, generally.**

4.    Instead, Plaintiff asserts liability against the Defendants on the ground that the Moving Defendants purchased the assets of Defendant Advanced.  **Amended Complaint, ¶ 38-39.**

5.    More specifically, Plaintiffs allege that Defendant Handmade acquired a mortgage and security agreement secured by Defendant Advanced's assets in May of 2004, and then purchased the assets of Defendant Advanced at a public foreclosure auction on June 30, 2004. **Amended Complaint, ¶ 6-9.**

6.    Plaintiffs further allege that Defendant Handmade transferred to Defendant Fastbikes the title to certain real estate which was the subject of the foreclosure auction, and transferred to Defendant Aegis Racing the personal property collateral which was the subject of the foreclosure auction.  **Amended Complaint, ¶ 10-11.**

7.    Plaintiff alleges that there was "continuity of ownership" among the Moving Defendants, but does not allege that there was any "continuity of ownership" between Defendant Advanced and the Moving Defendants.  **Amended Complaint, ¶ 12.**

8.    Plaintiff alleges that the Moving Defendants "continued the enterprise" of Defendant Advanced and continued to design, manufacture and sell the bicycle component ( a "Hotrod" bicycle fork) which allegedly caused Plaintiff's accident.  **Amended Complaint, ¶ 13.** Plaintiff does not make any allegations regarding continuity of shareholders, officers, or directors as between Defendant Advanced and the Moving Defendants.

**II.    Standard of Review and Choice of Law**

**A.    Standard of Review**

The standard for deciding a motion to dismiss is well-known:

> A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleadings. Thus, when confronted with a motion to dismiss the

> court accepts as true all well-pleaded facts and draws all
> reasonable inferences in favor of the plaintiff.

*JSB Indus. v. Nexus Payroll Servs., Inc.*, 463 F. Supp. 2d 103, 106 (D. Mass. 2006).

An important recent decision of the United States Supreme Court, *Bell Atlantic Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 167 L.Ed.2d 929 (May 21, 2007), emphasized the importance of pleading specific facts, not just broad legal conclusions, which must create a "plausible entitlement to relief", in order to survive a motion to dismiss.   The First Circuit has described the effect of *Bell Atlantic* as follows:

> At the outset, we note that even under the liberal pleading standard
> of Federal Rule of Civil Procedure 8, the Supreme Court has
> recently held that to survive a motion to dismiss, a complaint must
> allege "a plausible entitlement to relief." *Bell Atlantic Corp. v.
> Twombly*, 127 S. Ct. 1955, 1967 (2007). In so doing, the Court
> disavowed the oft-quoted language of *Conley v. Gibson*, 355 U.S.
> 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), that "a complaint
> should not be dismissed for failure to state a claim unless it appears
> beyond doubt that the plaintiff can prove no set of facts in support
> of his claim which would entitle him to relief." *See Twombly*, 127
> S. Ct. at 1969. The Court found that the "no set of facts" language,
> if taken literally, would impermissibly allow for the pleading of "a
> wholly conclusory statement of [a] claim," and that "after puzzling
> the profession for 50 years, this famous observation has earned its
> retirement." Id. at 1968, 1969.

*Rodriguez-Ortiz v. Margo Caribe, Inc.*, 2007 U.S. App. LEXIS 14316 (1st Cir. June 18, 2007).

The Supreme Court in *Bell Atlantic* explained these principles as follows:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss
> does not need detailed factual allegations, *ibid.; Sanjuan v.
> American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251
> (CA7 1994), a plaintiff's obligation to provide the  "grounds" of his
> "entitlement to relief" requires more than labels and conclusions,
> and a formulaic recitation of the elements of a cause of action will
> not do, see *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932,
> 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not
> bound to accept as true a legal conclusion couched as a factual
> allegation").

127 S. Ct. at 1964-1965, 167 L. Ed. 2d at 940.

The Supreme Court further noted that the reason for these requirements was to avoid

unnecessary expenditures of time and money to defend cases which the plaintiff cannot win:

> The need at the pleading stage for allegations plausibly suggesting
> (not merely consistent with) agreement reflects the threshold
> requirement of Rule 8(a)(2) that the "plain statement" possess
> enough heft to "show that the pleader is entitled to relief." . . .
>
> *    *    *
>
> We alluded to the practical significance of the Rule 8 entitlement
> requirement in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S.
> 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005), when we
> explained that something beyond the mere possibility of loss
> causation must be alleged, lest a plaintiff with "'a largely
> groundless claim'" be allowed to "'take up the time of a number of
> other people, with the right to do so representing an *in terrorem*
> increment of the settlement value.'" *Id.*, at 347, 125 S. Ct. 1627,
> 161 L. Ed. 2d 577 (quoting *Blue Chip Stamps v. Manor Drug
> Stores*, 421 U.S. 723, 741, 95 S. Ct. 1917, 44 L. Ed. 2d 539
> (1975)). So, when the allegations in a complaint, however true,
> could not raise a claim of entitlement to relief, "'this basic
> deficiency should . . . be exposed at the point of minimum
> expenditure of time and money by the parties and the court.'" 5
> *Wright & Miller* § 1216, at 233-234 (quoting *Daves v. Hawaiian
> Dredging Co.*, 114 F. Supp. 643, 645 (Haw. 1953)).

127 S. Ct. at 1966, 167 L. Ed. 2d at 941-942.

In short, although all well-pleaded facts in Plaintiff's Amended Complaint must be taken

as true for purposes of this motion, the facts as pled must nonetheless demonstrate that Plaintiff

has a "plausible entitlement to relief" as against the Moving Defendants in order to survive this

Motion to Dismiss.  Because Plaintiff's Amended Complaint contains nothing more than broad

legal conclusions as to successor liability, unsupported by specific facts, this case should be

dismissed now, before the Moving Defendants incur the substantial cost of defending this action.

**B.    Choice of Law**

This Court has set forth the applicable choice of law principles as follows:

In an action based on diversity jurisdiction, this Court must apply conflict of law rules of the forum state. Relying on the *Restatement (Second) of Conflict of Laws*, Massachusetts has adopted a "functional" approach.  Courts "determine the choice-of-law question by assessing various choice-influencing considerations" including "the interests of the parties, the States involved, and the interstate system as a whole.  In doing so, Massachusetts courts apply the substantive law of the state which has the more significant relationship to the transaction in litigation. [Citations omitted throughout.]  To determine the significance of a state's interest, Massachusetts courts consider a variety of factors, including those set forth in the *Restatement (Second) of Conflict of Laws* § 6 (1971).[1]

*Dean v. Raytheon Corp.*, 399 F. Supp. 2d 27, 31 (D. Mass. 2005)(citations omitted throughout).

In a personal injury action, this Court noted in *Dean* that Massachusetts courts follow the

*Restatement* in determining choice of law issues in personal injury cases:

[Restatement] § 146 provides:

"In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied."

*Restatement (Second) Conflict of Laws* § 146 (1971); *see also Bergin v. Dartmouth  Pharm., Inc.*, 326 F. Supp. 2d 179, 183 (D. Mass. 2004) (holding that under Massachusetts law, "tort claims are governed by the law of the state where the alleged injury occurred, unless another state has a more significant relationship to the cause of action") (citation omitted); *Pevoski v. Pevoski*, 371 Mass. 358, 359, 358 N.E.2d 416, 417 (1976) (reaffirming the rule of lex loci delecti as "firmly established as the general tort conflicts rule," particularly where the issue involves "standards of conduct").

---

[1]   *Restatement (Second) Conflict of Laws* § 6 (1971) provides:

"The factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."

399 F.Supp.2d at 31-32.

Of particular significance in this case is the portion of Restatement § 146 which notes that the law of the forum state will be applied "unless, with respect to the particular issue, some other state has a more significant relationship".  Accordingly, choice of law decisions may be made on an issue-by-issue basis.  In the present case, even though the law of the forum state (Massachusetts) will control many of the issues which may arise in this case, Maine law should govern the successor liability issues as to the Moving Defendants, because Maine has the most significant relationship with respect to issues of successor liability arising out of a transaction in which one Maine corporation acquired assets of another Maine corporation at a foreclosure auction.

The *Restatement* recognizes that matters relating to corporations may be governed by the law of the state of incorporation rather than the law of the forum state.  There are two sections dealing with choice of law issues as to corporations:

### § 301 Rights Against and Liabilities to Third Person

The rights and liabilities of a corporation with respect to a third person that arise from a corporate act of a sort that can likewise be done by an individual are determined by the same choice-of-law principles as are applicable to non-corporate parties.

### § 302 Other Issues with Respect to Powers and Liabilities of a Corporation

(1) Issues involving the rights and liabilities of a corporation, other than those dealt with in § 301, are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) The local law of the state of incorporation will be applied to determine such issues, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied.

Applying this principle to the present case, the successor liability of the Moving Defendants is not controlled by Section 301, because its liability does not arise out of "an act of the sort that can likewise be done by an individual".  An individual cannot have successor corporate liability.  Instead, this issue falls under Section 302, because corporate successor liability is unique to corporate entities.

Neither of these *Restatement* sections specifically addresses successor liability. However, the comment to Section 302, which states the rationale for the application of the law of the state of incorporation, supports the application of the law of the state of incorporation to questions of successor liability:

> The factors listed in Subsection (2) of the rule of § 6 vary somewhat in importance from field to field. Those which come to the fore in the field of corporations are the needs of the interstate and international systems, certainty, predictability and uniformity of result, protection of the justified expectations of the parties, implementation of the relevant policies of the state with the dominant interest in the decision of the particular issue, and ease in the application of the law to be applied. These factors, for reasons stated in Comments e-h, will usually lead to the application of the local law of the state of incorporation, which in the situation dealt with here is a contact of great significance. The local law of the state of incorporation will be applied unless application of the local law of some other state is required by reason of the overriding interest of that other state in the issue to be decided.

*Restatement (Second) of Conflicts of Laws*, § 302, Comment b (1971).

It makes sense to apply Maine law to questions of successor liability for Maine corporations.  When a Maine corporation buys assets at a public foreclosure auction held in Maine, and conducted pursuant to Maine's foreclosure statutes, the buyer would reasonably expect that Maine law would apply to that transaction.  The buyer would have no way of knowing that the previous owner of the assets had done business with a Massachusetts resident. The decisions of a Maine buyer with respect to structuring its business going forward, including

decisions on purchasing liability insurance, would be made based on its understanding of Maine law. Applying Massachusetts law to a corporate transaction entirely unconnected to the Commonwealth of Massachusetts would be inconsistent with the justified expectations of the Maine buyer of assets at a foreclosure auction.

In a somewhat different context, the First Circuit has recognized the strong interest of the State of Maine in controlling the successor liability of Maine corporations. In *Jordan v. Hawker Dayton Corporation*, 62 F.3d 29 (1st Cir. 1995), which is discussed in more detail below, the Court rejected a claim of successor liability against a Maine defendant. The First Circuit noted Maine's over-riding interest in limiting the successor liability of Maine corporations:

> First, the rule, as stated above, that a mere asset purchase will not give rise to successor liability is articulated by Maine's highest court as being "the established common law rule." That alone defeats Jordan's claim, as he has argued that Maine law applies. This common law rule is reinforced by the social policy judgment made by the Maine legislature, in the statute at issue in *Diamond Brands*. Maine there decided that it is benefited by not discouraging purchases of assets of Maine businesses through imposition of successor liability on purchasing corporations, thus keeping businesses going which would otherwise fail, and so continuing to have employees benefit from their continued employment.

62 F.3d at 31. (Emphasis added.) The Court noted that this policy interest in limiting successor liability would be applied, even though the practical effect was to leave plaintiff with no effective remedy:

> Here Jordan has suffered an injury and East Dayton appears to no longer have assets with which to satisfy his claim. But the complex policy arguments as to whether the common law should strive to assure him recompense are left to the state, not the federal court, to decide. Here Maine has made that calculus and given the greater weight to the protection of jobs through limits on successor liability. It is not the role of the federal courts to "question the policy choices of states whose law we apply." *Krauss v.*

>                    *Manhattan Life Insurance Company of New York*, 643 F.2d 98,
>                    102 (2d Cir. 1981).

62 F.3d at 32.

      To summarize, then, the First Circuit has recognized the important interest that a state has in limiting the liability of corporations incorporated in that state which purchase the assets of other corporations from within that state. This Court should likewise recognize this compelling state interest. This Court should hold that Maine has the most significant interest in resolving questions of successor liabilities of Maine corporations, and should apply Maine law in the present case.

## III.    Plaintiff Has Failed To State A Claim Upon Which Relief May Be Granted As Against The Moving Defendants.

      As a starting point, it is beyond belief that any court, let alone a Massachusetts federal court, would rule that a purchaser of assets at a Maine foreclosure auction automatically assumes liability for personal injury claims arising out of products manufactured by the previous owner of the assets. No one would ever buy assets at a foreclosure sale again. It would be impossible to conduct the due diligence investigation needed to identify and quantify the liability exposure that the purchaser would assume. Needless to say, the banking industry would be severely harmed by such a ruling, because it would become virtually impossible to dispose of foreclosed assets. The insurance industry would likewise be horrified, and would refuse to insure anyone who acquired assets at a foreclosure sale. The damage to Maine's economy as a whole would be massive.

      For precisely these reasons, Maine takes a particularly restrictive view of corporate successor liability. In *Jordan v. Hawker Dayton Corporation*, 62 F.3d 29 (1st Cir. 1995), a

products liability case applying Maine law, the First Circuit reviewed the Maine cases and

described Maine law on successor liability as follows:

> Four years ago, albeit in a different context than a tort suit, the
> Supreme Judicial Court of Maine held, as to corporate successor
> liability: "Absent a contrary agreement by the parties, or an explicit
> statutory provision in derogation of the established common law
> rule, a corporation that purchases the assets of another corporation
> in a bona fide, arm's-length transaction is not liable for the debts or
> liabilities of the transferor corporation." *Director of Bureau of
> Labor Standards v. Diamond Brands, Inc.*, 588 A.2d 734, 736 (Me.
> 1991). *Diamond Brands* involved interpretation of the term
> "employer" in a severance pay statute. Conceding that there is no
> contrary agreement by the asset purchase parties and no statutory
> exception to common law here, Jordan tries to avoid the *Diamond
> Brands* holding by arguing the opinion does not foreshadow what
> the Maine Court would do in a tort action.
>
> There are two responses. First, the rule, as stated above, that a
> mere asset purchase will not give rise to successor liability is
> articulated by Maine's highest court as being "the established
> common law rule." That alone defeats Jordan's claim, as he has
> argued that Maine law applies. This common law rule is reinforced
> by the social policy judgment made by the Maine legislature, in the
> statute at issue in *Diamond Brands*. Maine there decided that it is
> benefited by not discouraging purchases of assets of Maine
> businesses through imposition of successor liability on purchasing
> corporations, thus keeping businesses going which would
> otherwise fail, and so continuing to have employees benefit from
> their continued employment. *Id.* at 737 n.7. Jordan points to no
> legal developments in the law of successor liability in Maine or in
> any other jurisdiction since *Diamond Brands* to suggest that the
> Supreme Judicial Court would change this law. *See Bernhardt v.
> Polygraph Co. of America*, 350 U.S. 198, 205, 100 L. Ed. 199, 76
> S. Ct. 273 (1956) ("There appears to be no confusion in the
> [Maine] decisions, no developing line of authorities that casts a
> shadow over the established ones, no dicta, doubts or ambiguities
> in the opinions of [Maine] judges on the question, no legislative
> development that promises to undermine the judicial rule."). Thus,
> *Diamond Brands* is the law of Maine, and this Court must apply
> that law.

62 F.3d at 31-32.  This holding is consistent with other federal court decisions adopting Maine's

restrictive approach to successor liability.  *See, e.g., Saco River Telephone & Telegraph Co. v.*

*Shooshan & Jackson, Inc.*, 826 F.Supp. 580, 582-583 (D.Me. 1993), noting that Maine law does not recognize the "de facto merger" and "continuity of enterprise" exceptions to the "general rule against successor liability."  There are no Maine state court decisions which reach a different result.

Based on this case law, it is clear that Plaintiff has failed to plead a claim upon which relief may be granted, because Maine law simply does not recognize the "de facto merger" or "continuity of enterprise" theories of successor liability.

The First Circuit in *Jordan* also noted that federal courts are not the place to create new case law which modifies existing state law principles:

> Secondly, plaintiff chose a federal, rather than a state forum, presumably cognizant of this court's statement that "litigants who reject a state forum in order to bring suit in federal court under diversity jurisdiction cannot expect that new trails will be blazed." *Ryan v. Royal Insurance Company of America*, 916 F.2d 731, 744 (1st Cir. 1990).

62 F.3d at 32.  In the present case, Plaintiffs cannot expect this court to adopt novel principles of successor liability which the Maine courts have never adopted.

Turning to Massachusetts law, Massachusetts courts apply a somewhat more expansive view of successor liability than the Maine courts.  However, even under Massachusetts' broader application of successor liability principles, Plaintiff has failed to state a claim upon which relief may be granted because Plaintiff has failed to allege that there was any continuity of shareholders, officers or directors as between Defendant Advanced and the Moving Defendants.

This Court has summarized Massachusetts law on successor liability as follows:

> Most jurisdictions, including Massachusetts, follow the traditional corporate law principle that the liabilities of a selling predecessor corporation are not imposed upon the successor corporation which purchases its assets, unless (1) the successor expressly or impliedly assumes liability of the predecessor, (2) the transaction is a de

> facto merger or consolidation, (3) the successor is a mere
> continuation of the predecessor, or (4) the transaction is a
> fraudulent effort to avoid liabilities of the predecessor.

*JSB Industries, Inc. v. Nexus Payroll Services, Inc.*, 463 F.Supp.2d 103, (D.Mass. 2006), *quoting*

*Guzman v. MRM/Elgin*, 409 Mass. 563, 566, 567 N.E.2d 929, 931 (1991).

It is not clear which of the four exceptions Plaintiff relies on in the present case, but clearly there is no allegation of any agreement to assume liability, because the assets were acquired at a foreclosure auction, so there was no agreement between Defendant Advanced and the Moving Defendants. There is no allegation of fraud. Accordingly, the Complaint must fall within either the "de facto" merger exception, or the "mere continuation" exception. However, Plaintiff has failed to allege facts sufficient to satisfy the requirements of either of these theories of successor liability.

With respect to a "de facto merger", this Court has defined the principles of this exception as follows:

> In Massachusetts, [t]he factors that courts generally consider in
> determining whether to characterize an asset sale as a de facto
> merger are whether (1) there is a continuation of the enterprise of
> the seller corporation so that there is continuity of management,
> personnel, physical location, assets, and general business
> operations; whether (2) there is a continuity of shareholders which
> results from the purchasing corporation paying for the acquired
> assets with shares of its own stock, this stock ultimately coming to
> be held by the shareholders of the seller corporation so that they
> become a constituent part of the purchasing corporation; whether
> (3) the seller corporation ceases its ordinary business operations,
> liquidates, and dissolves as soon as legally and practically possible;
> and whether (4) the purchasing corporation assumes those
> obligations of the seller ordinarily necessary for the uninterrupted
> continuation of normal business operations of the seller
> corporation.

*Goguen v. Textron, Inc.*, 476 F. Supp. 2d 5, 12-13 (D. Mass. 2007), quoting *Cargill, Inc. v.*

*Beaver Coal & Oil Co., Inc.*, 424 Mass. 563, 359-60, 676 N.E.2d 815 (1997).

This Court in *Goguen* held that there can be no "de facto merger" without at least some continuity of ownership, despite certain language in *Cargill, supra*, indicating that no one factor is dispositive:

> Plaintiff also points to the dicta in *Cargill* that "no single factor is necessary . . . to establish a de facto merger," and argues that shareholder continuity is therefore merely a factor to be considered, not a prerequisite to be satisfied. While the Court acknowledges the breadth of the *Cargill* dicta, it also observes that no case has ever gone so far as to dispense with the "shareholder continuity" factor altogether. Furthermore, eliminating the requirement altogether would produce a result almost indistinguishable from the "continuity of enterprise" theory--a controversial approach that has not been adopted in Massachusetts. *See National Gypsum Co. v. Continental Brands Corp*., 895 F. Supp. 328, 340 (D. Mass. 1995). 8 *McCarthy v. Litton Indus., Inc.*, 410 Mass. 15, 23, 570 N.E.2d 1008 & n.6 (1991). The Court therefore concludes that, on the record evidence, there was no continuity of shareholders, and therefore plaintiff cannot establish that a de facto merger occurred between Textron and Bridgeport I.

476 F.Supp.2d at 14. Likewise, in the present case, Plaintiff has not alleged that there was any continuity of ownership as between Defendant Advanced and the Moving Defendants. Accordingly, Plaintiff has not pled an adequate "de facto merger" theory of successor liability.

Plaintiff has also failed to allege facts sufficient to bring the case within the "mere continuation" exception to the general rule against successor liability. In *McCarthy v. Litton Industries, Inc.*, 410 Mass. 15, 570 N.E.2d 1008 (1991), the Supreme Judicial Court described the elements of this exception as follows:

> The "continuation" exception to the general rule of nonliability, however, envisions a reorganization transforming a single company from one corporate entity into another. See 15 W. Fletcher, *supra* at § 7122 n.15, and cases cited. The purchasing corporation, in the words of one court, is merely a "new hat" for the seller. *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1458 (11th Cir. 1985). Thus, the imposition of liability on the purchaser is justified on the theory that, in substance if not in form, the purchasing corporation is the same company as the selling

corporation.

410 Mass. at 21-22, 570 N.E.2d at 1012.  The elements of this exception are the following:

> Thus, we reaffirm that the indices of a "continuation" are, at a
> minimum: continuity of directors, officers, and stockholders; and
> the continued existence of only one corporation after the sale of
> assets.

410 Mass. at 23, 570 N.E.2d at 1013.  In the present case, Plaintiff has failed to allege that there

is any continuity of directors, officers and stockholders between Defendant Advanced and the

Moving Defendants.

Plaintiffs allege that the Moving Defendants "continued the enterprise" of Defendant

Advanced, presumably to bring this case within the "continuity of enterprise" theory of successor

liability, which does not require a continuity of ownership.    However, this theory has never

been adopted as the law of Massachusetts.  This Court has described the "continuity of

enterprise" theory as "controversial" and notes that it has not been adopted in Massachusetts.

*Goguen, supra*, 476 F.Supp.3d at 22.  The Supreme Judicial Court considered this theory of

liability in *McCarthy*, supra, and described it as follows:

> A few courts have adopted a broader "continuity of enterprise"
> exception to the general rule of successor nonliability in strict
> liability product defect cases. See generally 15 W. Fletcher, supra
> at § 7123.06. The continuity of enterprise exception is said to be a
> less radical departure from traditional corporate law rules than the
> product line theory. Id. at 275. Continuity of enterprise analysis
> does not require that the predecessor and successor corporations
> have common shareholders . . .

410 Mass. at 22, 570 N.E.2d at 1013.  The Court noted that the "continuity of enterprise" theory

"remains distinctly a minority approach", and ultimately concluded that it need not reach the

issue of whether this exception is recognized in Massachusetts.  410 Mass. at 23, and fn. 6, 570

N.E.2d at 1013, and fn. 6.  Again, a plaintiff who sues in federal court should not expect this

- 14 -

court to adopt novel theories of liability which have never been adopted in state court.

Essentially, Plaintiff has pled a "product line" theory of successor liability, asserting that the Moving Defendants may be liable because they continue to sell the product that allegedly caused Plaintiff's injuries.   However, this theory of successor liability has been conclusively rejected by Massachusetts' Supreme Judicial Court in *Guzman v. MRM/Elgin*, 409 Mass. 563, 566, 567 N.E.2d 929, 931 (1991).  The Supreme Judicial Court considered at length the case law and rationales supporting this minority theory of successor liability and rejected it:

> The majority of State courts that have addressed the product line theory have declined to adopt it. See, e.g., *Bernard v. Kee Mfg. Co.*, 409 So. 2d 1047, 1050 (Fla. 1982); *Domine v. Fulton Iron Works*, 76 Ill. App. 3d 253, 257 (1979); *DeLapp v. Xtraman, Inc.*, 417 N.W.2d 219, 222 (Iowa 1987); *Pelc v. Bendix Mach. Tool Corp.*, 111 Mich. App. 343, 356 (1981); *Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 100 (Minn. 1989); *Young v. Fulton Iron Works Co.*, 709 S.W.2d 927, 940 (Mo. Ct. App. 1986); *Jones v. Johnson Mach. & Press Co.*, 211 Neb. 724, 730 (1982); *Downtowner, Inc. v. Acrometal Prods., Inc.*, 347 N.W.2d 118, 123 (N.D. 1984); *Simoneau v. South Bend Lathe, Inc.*, 130 N.H. 466, 469 (1988); *Flaugher v. Cone Automatic Mach. Co.*, 30 Ohio St. 3d 60, 66 (1987); *Hamaker v. Kenwel-Jackson Mach., Inc.*, 387 N.W.2d 515, 521 (S.D. 1986); *Griggs v. Capitol Mach. Works, Inc.*, 690 S.W.2d 287, 293 (Tex. Ct. App. 1985); *Ostrowski v. Hydra Tool Corp.*, 144 Vt. 305, 308 (1984); *Fish v. Amsted Indus., Inc.*, 126 Wis. 2d 293, 309-310 (1985). We also decline to adopt the product line theory of recovery, for the reasons discussed below.

409 Mass. at 567, 567 N.E.2d  at 931.

To summarize, Plaintiff has failed to allege any facts that would support the application of successor liability on the Moving Defendants.  Plaintiff's generalized, conclusory allegations that the Moving Defendants continued the enterprise of Defendant Advanced do not satisfy the pleading requirements as set forth by the U.S. Supreme Court in the *Bell Atlantic* case.  It was incumbent on the Plaintiff to plead specific facts which would support a finding of successor

liability, but Plaintiff has failed to do so. Plaintiff has failed to allege any continuity of shareholders, officers or directors between Defendant Advanced and the Moving Defendants (which is understandable, since there is no continuity of shareholders, officers and directors as between these corporations.) Under either Maine law or Massachusetts law, the absence of continuity in these areas is fatal to a successor liability claim, and all claims against the Moving Defendants should be dismissed with prejudice.

## IV.    This Court Lacks Personal Jurisdiction Over The Moving Defendants.

As an additional reason to dismiss the claims against the Moving Defendants, Plaintiff has failed to plead any facts that would subject any of the Moving Defendants to the jurisdiction of this Court. Plaintiff describes the Moving Defendants as Maine corporations with principal places of business in Camden, Maine. **Amended Complaint, ¶ 4-5.** Plaintiff then alleges that "the defendants have sufficient contacts with the Commonwealth of Massachusetts to subject it [sic]to the jurisdiction of this Court. **Amended Complaint, ¶ 20.** However, Plaintiff makes no effort to spell out what those contacts may be with respect to any of the Defendants.

This is not enough to establish either specific or general jurisdiction over the Moving Defendants. With respect to general jurisdiction, there is no allegation that any of the Moving Defendants maintain an office or other corporate presence in Massachusetts, or do business there in any significant way.

With respect to specific jurisdiction, the Moving Defendants' only possible connection to Massachusetts is through Defendant Advanced. Plaintiff may argue that Defendant Advanced's contacts with Massachusetts should be imputed to the Moving Defendants to establish specific jurisdiction over the Moving Defendants. However, courts which have considered this question have determined that personal jurisdiction over the predecessor corporation will justify personal

jurisdiction over the successor only if there is a viable claim for successor liability:

> In the absence of successor liability under Maine law,
> [predecessor]'s contacts cannot be ascribed to [successor], and thus
> cannot constitute the basis for exercising specific personal
> jurisdiction over [successor].

*Saco River Telephone & Telegraph Co. v. Shooshan & Jackson, Inc.*, 826 F.Supp. 580, 583

(D.Me. 1993).  Thus, because Plaintiff has not pled a viable successor liability claim, Plaintiff

has not established jurisdiction over the Moving Defendants.

The Moving Defendants should not have to defend this action in a court several hundred

miles from their principal place of business in Camden, Maine, because there is no evidence that

they should have reasonably anticipated that they would have to litigate a case in the

Massachusetts courts.

**V.      Conclusion**

Plaintiff has failed to plead a viable successor liability claim against the Moving

Defendants under either Maine or Massachusetts law.  All counts against the Moving Defendants

should be dismissed, with prejudice.

DATED at Portland, Maine this 19th day of July, 2007.


                                        /s/  Paul R. Johnson
                                        Paul R. Johnson, Esq.
                                        Mass. BBO # 546165
                                        Attorney for Aegis Handmade Carbon Fiber
                                        Bicycles, LLC, Aegis Racing Bikes USA,
                                        LLC, And Fastbikes USA, LLC

RICHARDSON, WHITMAN, LARGE & BADGER
465 Congress Street
P. O. Box 9545
Portland, ME  04112-9545
(207) 774-7474
pjohnson@rwlb.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the following registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants, on this 19th day of July, 2007.

Sergio C Deganis
Ouellette, Deganis & Gallagher, LLC
143 Main Street
Cheshire, CT 06410
203-272-1157
Email: Sdeganis@ODGWLAW.com

James D. Poliquin
Norman, Hanson & DeTroy
P.O. B ox 4600
415 Congress Street
Portland, ME 04112
(207) 774-7000

Brian H. Sullivan
Sloane & Walsh
3 Center Plaza
Boston, MA 02108
617-523-6010
 Email: bsullivan@sloanewalsh.com

William J. Dailey, Jr.
Sloane & Walsh, LLP
Three Center Plaza
Boston, MA 02108
617-523-6010
Email: wdaileyjr@sloanewalsh.com

Christopher A Callanan
Campbell, Campbell, Edwards & Conroy, PC
One Constitution Plaza
Boston, MA 02129
617-241-3057
 Email: ccallanan@campbell-trial-lawyers.com

James B. Vogts
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive

Chicago, IL 60606-1229
312-201-2670
 Email: vogts@wildman.com

Richard L. Edwards
Campbell, Campbell, Edwards & Conroy, PC
One Constitution Plaza
Boston, MA 02129
617-241-3000
 Email: redwards@campbell-trial-lawyers.com

Terrance J. Hamilton
Casner & Edwards, LLP
303 Congress Street
Boston, MA 02210
617-426-5900
 Email: tjhamilton@casneredwards.com

                                        /s/  Paul R. Johnson